UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK  
--------------------------------------------------------------x  
CHARTER CONTRACTING COMPANY, : 
LLC, :
                      Plaintiff, :
v. : **OPINION AND ORDER**
  :
ORANGE & ROCKLAND UTILITIES, INC., : 20 CV 795 (VB)
and CONSOLIDATED EDISON COMPANY :
OF NEW YORK, INC., :
                    Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiff Charter Contracting Company, LLC ("Charter"), brings this action against Orange & Rockland Utilities, Inc., and Consolidated Edison Company of New York, Inc., alleging breach of contract and breach of the implied covenant of good faith and fair dealing.

    Now pending is defendants' motion to dismiss the first amended complaint ("FAC") pursuant to Rule 12(b)(6).  (Doc. #11).

    For the reasons set forth below, the motion is GRANTED.[1]

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

---

[1] Also pending is Charter's motion to strike the declaration of Gregory B. Eiband submitted in support of defendants' motion to dismiss.  (Doc. #37).  The documents Charter seeks to strike are referenced throughout both the FAC and the Modified Purchase Order and Terms and Conditions (the "Contract"), attached as Exhibit 1 to the FAC, and are therefore properly considered as part of the pleadings.  See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002).  Nevertheless, because the Court considered only the FAC and the Contract in granting defendants' motion to dismiss, Charter's motion to strike is DENIED as moot.

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the first amended complaint and draws all reasonable inferences in plaintiff's favor, as set forth below.

Charter allegedly entered into a contract with defendants wherein Charter agreed to perform environmental remediation of a defunct "manufactured gas plant" in Haverstraw, New York. (Doc. #24 ("FAC") ¶¶ 8–10). Specifically, Charter was required to design and install excavation support systems, and to excavate contaminated soil and material from the site and transport it to specified disposal facilities. Charter alleges it agreed to perform all work involved with remediating the site in exchange for a set fee. Charter further alleges that, in response to unanticipated difficulties caused by subsurface obstructions, defendants approved one modification to the Contract to compensate Charter for costs related to those obstructions.

Charter claims defendants breached the Contract by: (i) providing defective and false representations regarding the condition of the site (FAC ¶¶ 19–27, 49–54); (ii) rejecting additional modifications to the Contract that Charter asserts were required to address unanticipated subsurface obstructions (id. ¶¶ 56–93); (iii) refusing to permit Charter to dispose of excavated soil at facilities other than those specified in the Contract (id. ¶¶ 125–29); (iv) refusing to compensate Charter for the increased quantity of work required due to unanticipated subsurface obstructions and due to Charter's needing to excavate more soil than originally anticipated (id. ¶¶ 131–63); and (v) by failing to timely pay Charter for undisputed Contract work (id. ¶¶ 177–84).

In addition, Charter alleges defendants breached the contract's implied covenant of good faith and fair dealing. (FAC ¶¶ 206–10). Charter claims defendants failed to take responsibility

2

for defective plans regarding the conditions of the site, blamed Charter for experiencing those unexpected conditions and for incurring additional costs, wrongfully withheld payments to obtain leverage over Charter, unfairly accused Charter of breaching the Contract, claimed unjustified offsets to payments, and refused to pay Charter undisputed amounts owed under the Contract. (Id. ¶ 208).

Charter seeks to recover damages including the extra costs it allegedly incurred for performing extra work that was unanticipated when the parties entered into the Contract.

## DISCUSSION

I.      12(b)(6) Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

When ruling on a motion to dismiss, the Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002) (quotations and citation omitted). Furthermore, the Court need not accept as true "factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice." Perry v. NYSARC, Inc., 424 F. App'x 23, 25 (2d Cir. 2011) (summary order); see also, e.g., Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1095 (2d Cir. 1995) (refusing to credit "attenuated allegations" "contradicted both by more specific allegations in the Complaint and by facts of which [the Court] may take judicial notice.").

II. Breach of Contract

A. Legal Standard

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011). The complaint must include specific allegations that the defendant's breach caused the plaintiff damages. Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d 42, 52 (2d Cir. 2011).[2]

B. Application

Defendants argue Charter fails plausibly to allege defendants breached the Contract.

The Court agrees.

---

[2] When, as here, "[t]he parties' briefs assume that New York law controls, . . . such implied consent is sufficient to establish choice of law." Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000) (original quotations and alterations omitted).

4

1.      Providing Defective Information About the Site

Charter alleges defendants breached the Contract by providing defective project designs and specifications that were incomplete and contained inaccurate information concerning site and soil conditions. Charter alleges it relied on defendants' representations regarding the scope of the project. But Charter fails to identify any contractual provision defendants breached by providing "faulty and defective" project designs that "violated professional standards." (FAC ¶ 51).

The Contract contains no provision requiring defendants to provide Charter with designs and specifications of any particular quality. In fact, in Article 8 of the Contract, Charter acknowledged it "examined the specifications, drawings, and other Contract documents and has satisfied itself as to the requirements of the Work." (Doc. #24-1 (the "Contract") at 18).[3] Furthermore, Charter explicitly agreed its "entry into the Contract [was] not induced either wholly or in part by any promises, representations or statements [by defendants] other than those set forth in the Contract, and that any failure of [Charter] to examine the Work site, Contract documents, or all other available information [was] at its own risk." (Id.)  Moreover, Article 22 states defendants "shall not be obliged to show any subsurface conditions on any drawing, plans or specifications it furnishes to Charter." (Id. at 29). Although Article 3 required Charter to perform its work in "strict accordance" with the plans and specifications defendants provided, such language placed no obligation upon defendants to provide plans or specifications of a particular quality. (Id. at 13).

---

[3]     Unless otherwise indicated, citations to documents filed on the docket refer to the page numbers automatically assigned by the Court's Electronic Case Filing System, or "ECF."

5

Thus, Charter fails to allege defendants breached the Contract by providing inaccurate, defective, or incomplete information regarding site conditions.

2. Refused Modifications

Charter also complains defendants refused to modify the Contract despite unexpected conditions Charter encountered at the site and despite Charter's inability to efficiently dispose of excavated soil at certain agreed-upon facilities. Specifically, Charter alleges it encountered unexpected subsurface obstructions that differed materially from conditions expressed in the Contract documents. Charter also alleges defendants were required to modify the Contract and compensate Charter for the extra work needed to remediate the site due to those subsurface conditions. And Charter alleges it was obligated to dispose of excavated soil at certain facilities, but for various reasons, could not dispose of soil at certain of those facilities. Charter claims its inability to quickly dispose of excavated soil caused its costs to increase and its workflow to slow. Although Charter alleges defendants agreed to modify the Contract once, it alleges defendants should have further modified the Contract in response to these unanticipated conditions. Charter claims defendants' failure to agree to additional modifications, and their refusal to pay Charter for the increased quantities of work required to remediate the site, breached the Contract.

According to Charter, Contract Articles 13, 16, and 22 required such modifications.

The Court disagrees.

Article 13 states defendants "shall have the right at any time . . . to direct changes in the Work, including direction to do extra work outside of normal hours . . . or to delete part of the Work." (Contract at 21). Furthermore "[i]f any <u>such</u> change causes an increase or decrease in the cost or amount of time required for performance . . . an equitable adjustment shall be made in

6

the Contract price or schedule, or both." (Id. (emphasis added)).  Article 13 obligates defendants to modify the Contract only when defendants directed the change in work.  It provides no obligation to modify the Contract in response to unanticipated circumstances.

Likewise, Charter points to no provision of Article 16 requiring defendants to agree to any proposed modification.  Specifically, Article 16 provides Charter may only make "claims for (i) providing services or materials beyond the scope of the Contract that are not covered by a written and signed change order . . ., and (ii) the increased cost of performing Contract work caused by [defendants'] breach of the Contract."  (Contract at 25).  Article 16 limits claims Charter may make against defendants and provides a method for making claims under the Contract.  Article 16 also creates a separate procedure to handle claims based "upon delay, impact, interference, disruption, loss of productivity or any other time-or-schedule-related impact for which [Charter] asserts [defendants] are responsible."  (Id.)

Charter alleges in only a conclusory fashion that defendants acted in bad faith in refusing to grant an equitable modification of the Contract.  Such allegations are insufficient to allege a breach of Article 16.

Finally, Article 22 obligates Charter to notify defendants if it encounters subsurface conditions that differ from those indicated by the specifications and drawings defendants provided. (Contract at 29–30).  Upon notification, Article 22 requires defendants only to "promptly investigate the conditions," and, if the conditions materially differed from those shown on the plans defendants provided to Charter, defendants may "make any changes necessary."  (Id. at 30)  Any "increase or decrease in the cost of or time required for performance resulting from such changes" must be approved by defendants in accordance with the provisions of Articles 13 and 6.  (Id.)

7

But Article 22 does not obligate defendants to accept any proposed modification. Charter's assertion that defendants "intentionally delayed approval of Charter's differing site conditions claim to leverage Charter's continued performance" of the work fails to allege any specific conduct that would have breached Article 22.  (FAC ¶ 65).  That defendants delayed in approving a requested modification, or rejected a proposed modification, does not allege a breach of Article 22.  To the contrary, Charter alleges defendants complied with the provisions of Article 22 by approving a requested modification based on differing site conditions.  Charter's alleged breach stems from defendants' refusal to <u>further</u> modify the Contract.  But Articles 22, 13, and 16 do not obligate defendants to approve of <u>any</u> requested modification.

Thus, Charter does not plausibly allege defendants breached the Contract by refusing Contract modifications in response to unanticipated subsurface obstructions or Charter's inability to efficiently dispose of excavated soil.  Likewise, Charter's claim that defendants refused to compensate Charter for additional work it performed alleges no breach.

3. <u>Untimely Payments</u>

Charter alleges defendants failed to make timely payments to Charter for undisputed base Contract work.  Specifically, Charter alleges it made three payment applications to defendants that included payments for a certain amount of agreed-upon Contract work, but defendants failed to timely pay Charter upon final completion of the project and within thirty days after receiving Charter's invoices.[4]  (FAC ¶¶ 178–84).  Charter alleges Articles 4 and 54 obligated defendants to so pay.

The Court agrees.  However, because Charter fails to allege any damages resulting from defendants' breach of these two Articles, the Court dismisses Charter's claims.

---

[4]   Charter did not attach to the FAC any of the disputed payment applications.

8

Article 4 states that "[u]nless otherwise specified in the Contract, payment shall be made within thirty (30) days of receipt of each invoice." (Contract at 13). Article 54 states that "[e]xcept as otherwise provided in the Contract, during the pendency of any [] claim or dispute, [Charter] shall be entitled to receive payments from [defendants] only with respect to non-disputed items or matters." (Contract at 44).

Charter plausibly alleges defendants failed to timely pay Charter for undisputed Contract work amounting to approximately $946,823.09. (FAC ¶¶ 178–84). Charter alleges it documented roughly $972,823.09 in work over the course of three payment applications, only $26,000 of which involved costs related to work beyond the scope of the Contract. (Id.) Charter also alleges it fully completed its work under the Contract. Furthermore, Charter claims defendants "failed or refused to pay Charter within thirty (30) days all undisputed amounts owed notwithstanding other amounts remaining in dispute." (Id. ¶ 184).[5] These allegations are sufficient to allege a breach of Articles 4 and 54 of the Contract.

Nevertheless, Charter does not allege any damages resulted from defendants' late payments. While Charter does allege it suffered damages, the FAC contains no factual allegations linking defendants' late payments to any of the damages Charter allegedly suffered. See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC, 631 F.3d at 52 ("Causation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach directly and proximately caused his or her damages." (emphasis in original)). The Court must therefore dismiss Charter's claim for a breach of Articles 4 and 54.

---

[5] Charter does not clearly allege defendants have completely refused or entirely failed to pay outstanding amounts for undisputed Contract work. While reading certain of Charter's allegations in isolation could permit such an inference, reading the FAC as a whole does not permit the Court to so infer because more specific allegations claim only that payments for undisputed work were not timely made. (See FAC ¶¶ 178–84).

III.     Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants argue Charter's claim for breach of the implied covenant of good faith and fair dealing must be dismissed because it is based on the same operative facts as Charter's breach of contract claim.

The Court agrees.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 125 (2d Cir. 2013) (internal quotation omitted). This duty "is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce, 265 A.D.2d 513, 514 (2d Dep't 1999).

"New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Cruz v. FXDirectDealer, LLC, 720 F.3d at 125 (internal quotation and alteration omitted). "[W]hen a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." Id.

Charter's claim for breach of the implied covenant of good faith and fair dealing is predicated on the same alleged facts as its breach of contract claim. Charter only supplements its breach of contract claim with vague and conclusory allegations that defendants acted in bad faith and with intentional ill-will when breaching the Contract. The claims are thus based on the same

10

facts and Charter's claim for a breach of the implied covenant of good faith and fair dealing must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED.

The motion to strike is DENIED as moot.

The Clerk is instructed to terminate the motions (Docs. ##11, 37) and close this case.

Dated: December 30, 2020
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

11